By the Court. Bosworth, J.
Is the charge of the Judge, that No. 18 John street was a proper place to present the note for payment, correct? Caffe & Cutter, the makers of the note, commenced business in 1846. The note in question matured the 6th of December, 1853. On the 3d of October, 1853, the makers failed in business, and made a general assignment of their property for the benefit of their creditors, to the defendant Youngs. The sign on the outside of the building was not removed. Their office, or the rooms in which the firm had done its business, was on the second floor of the buildings. On the door, opening from the hall into their place of business, there had been a sign, bearing the name of Caffe & Cutter. On their failure, this sign was removed, and one bearing the name of Daniel T. Youngs, assignee, was put on the door. P. Caffe, one of the firm, continued to resort to his former place of business, for three or four weeks after the failure. The testimony tends to show, that he ceased to go there, about a month before the note matured. Youngs, the assignee, occupied the rooms formerly occupied by the firm, in transacting the business devolved upon him by reason of the assignment. The Judge charged, that 18 John street, after it ceased to be the place of business of Caffe & Cutter, being adopted by the assignee as the office for the transaction of the business of the estate, was the proper place of presentment. To this charge, the counsel for the executrix of Laverty, and the counsel of the defendant, Youngs, severally excepted, and requested the Judge to charge that it was not sufficient to present it there, unless that was also the maker’s place of business, and that if they had no place of business, the presentment must be at their residence, or to them personally.
The Judge refused to charge otherwise than as above stated, and the counsel of the executrix excepted, as did also the counsel of Youngs.
The charge affirms, that a presentment made at 18 John street,: *232 was sufficient, although it may have ceased to be the maker’s place of business, merely because a general assignee, of all their property for the benefit of their creditors, had adopted it as his office for the transaction of the business of the estate.
We think this ruling erroneous. Youngs was not a general agent of the makers of the note, to transact their business as such agent, at 18 John street, or elsewhere.
He had no right to use the proceeds of the assigned property to pay the debts of his assignors, except'in such order of priority as the assignment prescribed. Creditors of the same class, if there was not enough to pay them in full, would be entitled to be paid pro rata. Youngs, as assignee, was trustee of an express trust. He was not an agent of the assignors, in any sense in which that word is employed, in treating of the relation of principal and agent, and the consequences resulting from it to the parties, or to third persons. In whatever he did, or could properly do, as assignee, he was acting as principal, no more subject to the control of the assignors, than to that of their creditors, and subject to no other actual control from either, than they could obtain by action, to compel him to perform the.duties devolved on him by the assignment, or to make good any losses caused by a violation of his duty, or a failure to perform it. Eo authority has been cited, which sustains the decision made at the trial.
The rule seems to be settled, that even the "known bankruptcy or insolvency of the acceptor of a bill, or of the maker of a note, will not excuse the failure to present it to him personally, or at his place of business or residence, for payment, Eeither will they excuse the omission to give notice to the endorser. (Ohitty on Bills, 386; 3 Kent’s Com. 95.)
Where no presentment has been made to the maker personally, or at his residence or place of business, the inquiry generally is, whether, under the circumstances of the case, due diligence has been used, the general principle being, that due diligence must be used to find out the party, and make the demand. (3 Kent, 96.)
But the charge, as given, entirely withdrew that question from the consideration of the jury. We certainly cannot say that any facts were proved, which the court was authorized to hold, amounted, in judgment of law, to due diligence.
The sign of Daniel T. Youngs, assignee, on the door of the *233 office, or former place of business of Caffe & Cutter, was a formal notice to all persons seeking them, that it had become the place of business of another person, and had ceased to be their place of business. The firm had been in business, in this city, some seven years. There is no evidence that the slightest inquiry was made to ascertain the residence of either of the makers. On such evidence, we cannot say that due diligence was used to find the makers. The charge made being erroneous, the executrix of Laverty, and the defendant Youngs, are entitled to a new trial on that ground.
If the case had disclosed the contents of the assignment, it might have appeared to be a general assignment of all the property of the assignors to Youngs, the first endorser, upon trusts, and among others, to firSE pay all notes made by the assignors, on which Youngs had been, or might be made liable as endorser. If so, the Mechanics' Bank of New York v. Griswold, (7 Wend. 163,) is an authority, that neither demand, nor notice, would have been necessary to charge Youngs, ás endorser. But the case does not disclose the terms of the assignment made by Caffe & Cutter to Youngs.
The questions most difficult of solution, relate to the effect that the'jury might properly give to the representations testified to have been made by Laverty to Dore, and to the paper which Laverty executed and delivered to Dore, in connection with the other evidence relating to the same subject matter. These questions affect only the executrix of Laverty.
We have no doubt that the note and the endorsements were without consideration, and that the note never had any legal inception, until it. was negotiated to the plaintiff, on the 15th or 16th of August, 1853, at a greater discount than at the rate of seven per cent.
Independent of the effect that may be given.to the paper, and to these verbal representations, and to the fact that the plaintiff may have bought the note, relying on the assurance that it was business paper, the plaintiff would have no right to recover. The note not having had any legal inception before the plaintiff bought it, and he having bought it at a discount exceeding the legal rate of interest, it would be void for usury, if there were no other evidence affecting its validity.
*234 It is not pretended, whatever may be the proper meaning of the paper of the 26th of September, 1853, or whatever it may be deemed to represent, that the plaintiff is in a position to claim, that he bought, relying on the truth of its statements. It was not in existence, until more than a month after the note in question was negotiated to the plaintiff. And the jury were expressly told, that if Dore was to be believed the paper of the 18th of August was not properly before them, and might be considered as out of the case. If the jury had not believed him, their verdict should have been for the defendants.
The Judge instructed the jury, “ that if the endorsers authorized Dore and Robinson to negotiate and sell the note, then they are bound by Dore’s representations in thecourse of that agency,” but that there was no evidence to show^mch an authority on the part of Youngs. The verdict, as to him, is, therefore, clearly against evidence. Caffe & Cutter have not appealed. The views hereinafter expressed have reference solely to the executrix of Laverty.
Dore testified as follows: “Mr. Laverty called upon me, in July, 1851, stating to me that Caffe & Cutter would hand me paper for sale with his endorsement, requesting me to use my endeavors to sell it, stating that it was business paper.” “ I commenced negotiating notes of Caffe & Cutter, endorsed by Laverty, about three years since, in 1851.” (The trial of this action commenced on the 21st of June, 1854.) “ Mr, Laverty called upon me in regard to negotiating their paper in 1851. I used to see him two or three times a week. After the failure of Caffe & Cutter, Mr. Laverty wanted the paper which he had signed,” (meaning the paper of the 18th of August,) “to be returned to him, which I refused. Mr. Laverty requested the first paper. I told him I could not give it up, because I held it as security for my representations.”
Laying out of view, for the present, the true meaning of the paper of the 26th of September, if Dore is to be credited, it is difficult to say, that his testimony would not justify the inference, that Laverty applied to Dore as early as June, 1851, to solicit his aid in selling paper, made by Caffe & Cutter, and endorsed by himself, and assured him that it was business paper. That this assurance was given to increase his facilities for selling the paper, *235 and with the expectation that he would make the same assurance to those to whom he might apply to purchase it. A difficulty, that arises at the outset, is whether this statement can be seen, or is shown, to have any connection with paper made two years subsequently.
If Dore is to be credited, then there is sufficient evidence to justify a jury in believing, that Laverty knew, or supposed, before he executed the paper of the 26th of September, that Dore had represented, or assumed to have represented, on negotiating the paper of Caffe & Cutter, endorsed by himself, that it was business paper. Instead of "denying his authority to have so represented, with respect to all or any of such paper, he obtained from Dore a surrender of the first paper, which, by its terms, applied to all notes made and endorsed like the one in suit, and gave in its place one, applicable to ten notes particularly described, and including the one in suit. Whatever the paper, on a strict criticism, may be thought to mean, it was desired by Dore, and may be supposed to have been- given by Laverty, as a voucher or assurance that the representations which the former had made, respecting the notes it embraced, were made by his authority.
If these views are correct, then there was evidence enough to justify a submission of the question, whether Laverty intended to assure Dore, and to authorize him to assure those with whom he might negotiate, that all the notes of Caffe & Cutter, endorsed by himself, which should be handed to him, by Caffe & Cutter, to be sold, down to and including the sale of the one in suit, was business paper, and to warrant their finding that he did.
Benedict, the plaintiff, testified, that he asked Dore if it was legitimate business paper, and he said it was. Dore did not say to whom the notes belonged; that if the witness had known it was accommodation paper, he would not have taken it. This evidence, if credited, would justify the jury in finding, that Benedict bought the note, relying on the assurance that it was business paper, and by reason of the representations, to that effect, made to him by Dore.
I do not overlook the fact, that the Judge decided, while Benedict was under examination, that any statements which Dore might have made to Benedict, as to the character of the paper, were not admissible, in evidence, as against the endorsers. But this decision *236 was made before any evidence had been given, that Dore negotiated the notes at the instance of Laverty, and was authorized by him to represent it to be business paper.
It needs no argument to show, that, when enough has been proved to entitle the plaintiff to go to the jury, upon the question whether Laverty authorized Dore to represent this note to be business paper, the plaintiff will have a right to show, if he can, that Dore did so represent, and that the plaintiff bought the note, relying upon such representation, and believing it to be true.
The paper of the 26th of September, does not import more, than that Laverty had been paid a consideration for endorsing the paper. At the same time, its terms are not inconsistent with the idea, that he had negotiated the note, for value, in the course of his business, and, in that way, had received a consideration for his endorsement. But they furnish no evidence of that fact.
Still, the circumstances under which it was executed—the conversation had, between him and Dore, at the time; the reasons assigned, by Dore, for refusing to surrender the paper, of the 18th of August, until this had been delivered to him—made this paper admissible as evidence, bearing upon the question, whether Laverty authorized, and intended to authorize, Dore to represent this to be business paper, with a view to influence third persons to buy it, relying on such representations.
Although the paper does not import, that Laverty had so negotiated the note, and, therefore, may not be so drawn as, of itself, to furnish evidence that the note was of the business character, that he had authorized Dore to represent, yet, as it was sworn to have been furnished, that Mr. Dore might be able to show that he was thus authorized, the fact, that he gave it under such circumstances, might, in the estimation of a jury, very properly be regarded as corroborating his statements, in respect to the authority originally given, and as illustrating the point, to what period, in the future, it was understood and intended that authority should continue.
If it had appeared that the plaintiff knew, when he discounted the note, that it was discounted for Caffe & Cutter, and that the money received from him was to be paid over to them, a jury might very properly find, that he did not discount it, relying on the truth of the representations made, as he would, in that case, *237 have had knowledge of facts, which would have been notice that it was not business paper. Having such knowledge, it might have been his duty to inquire further.
If he bought, supposing it was negotiated for, and at the instance of Laverty, and on representations made, or authorized by him, that it was business paper, then he would not be entitled to recover of the executrix, more than the sum paid for it, and interest. (Cram v. Hendricks, 7 Wend. 569.)
But if he bought, believing it was business paper, which had been negotiated by all the parties whose names it bore, relying upon assurances to that effect, which Laverty had authorized to be made, to enable a sale of it to be effected, it is difficult to perceive, on what ground, the executrix of Laverty can claim exemption from liability, if it shall be made to appear that enough was done to fix his liability, as endorser.
These observations sufficiently present the views, which we think should be submitted, as a guide to the jury, in respect to the questions of fact to be determined by them, on such evidence as the case, before us, presents; and the effect they would be authorized, if they credited the testimony of Dore, to give to the declarations of Laverty, made at the interview between the two, in July, 1851. They render it unnecessary to express any opinion upon various exceptions taken to portions of the charge, as a new trial must be granted, as to Youngs, as well as the executrix of Laverty, by reason of the instruction given in reference to the sufficiency of a presentment of the note, at 18 John street.
A new trial must be granted as to Youngs and Catlett.